UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

UNITED STATES OF AMERICA,  CASE NO: 15-CR-60010-WPD

v.

MICHAEL SZAFRANSKI
_____/

**DEFENDANT SZAFRANSKI'S SENTENCING MEMORANDUM**

Defendant Michael Szafranski, through counsel, respectfully submits his Sentencing Memorandum to the Court in advance of his sentencing hearing, scheduled for October 26, 2015. For the reasons set forth below, Mr. Szafranski requests a sentence that is sufficient but not greater than necessary to satisfy the sentencing goals of 18 U.S.C. § 3553.

## I.   INTRODUCTION

Michael Szafranski will be sentenced by this Honorable Court in connection with his guilty plea to one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. §371. There are no objections to the Presentence Report, which recommends a guidelines range of 30-37 months. The government has agreed to recommend a sentence at the low end of the guidelines range. Mr. Szafranski has no criminal record.

Mr. Szafranski has admitted his guilt for the criminal conduct he committed six years ago. He has expressed remorse for his actions and will do so again in a personal statement to the Court at sentencing. He has been publicly shamed in his community. He became a pariah in the synagogue, a place of refuge of great meaning to him. He has

1

given up his professional licenses. He has had to change his entire path in life, transitioning from being a respected financial advisor with multiple clients to learning an entirely new business selling auto transmissions as an Aamco franchisee. In the process, two of his franchises failed, and the remaining one he owns – which is now doing well enough for him to earn a living – is in a state of uncertainty given his guilty plea and in view of his upcoming incarceration. Mr. Szafranski has been humbled. He has lost everything. He has lived under the specter of this case for a long time. He has suffered.

Mr. Szafranski has sought to make amends for his conduct. He was debriefed multiple times by the government in an effort to assist the government in the prosecution of TD Bank banker Frank Spinosa, who recently pleaded guilty. He made full restitution more than five years ago, when he paid more than $6.5 million to the bankruptcy trustee, which represented more than 90% of his family's assets. He immediately informed the government of an additional Rothstein-related account of which he was aware in 2009, thus enabling the government to forfeit more than $1 million.[1]

By this memorandum, we seek to show the Court that the person Michael Szafranski became when he was mesmerized by the faux wealth and power of Scott Rothstein is not the essence of Mr. Szafranski. Mr. Szafranski allowed himself to become enamored with the image of being a bigshot, traveling on private planes, attending political fundraisers, sitting in skyboxes at football games and concerts, and eating at fancy restaurants, all in the company of Scott Rothstein. He became someone

---

[1] Mr. Szafranski also has penned a letter of apology to investors, but because his bond conditions preclude him from making any contact, he will simply read the letter at sentencing.

2

he never wishes to be again.  He blames no one but himself.  He simply asks that the Court take into consideration his entire life, rather than the period of time in which he allowed the lure of easy money to cloud his judgment and forever brand him a criminal.  We respectfully ask that the Court vary downward from 30-37 month guideline range to a sentence that will effectively punish Mr. Szafranski, yet allow him and his family to move on to the next chapter of his life after six years.

## II.     MR. SZAFRANSKI'S PERSONAL HISTORY AND CHARACTERISTICS

In describing Mr. Szafranski, we rely largely on direct quotes[2] from the letters submitted in support by his family and friends who know him best.  Those letters have been filed with the Court. The letters depict Mr. Szafranski as a man devoted to his family and especially others in his synagogue, who generously gives of his time to those who seek spiritual uplifting.  While the type of community service described may not be a traditional one, it is the type that is informed by his Jewish ideals and values.  As the letters attest, the "mitzvahs" Mr. Szafranski has performed have been within the context of his commitment to his Jewish religion, and are considered of the highest order in that religion: namely, organizing prayer services twice a day at his synagogue and bringing spiritual uplifting to the elderly and infirm, especially during the holidays.  This, of course, makes his own misconduct all the more embarrassing and painful to him, as Mr. Szafranski has accepted that his own actions are inconsistent with the ideals and values he was raised to respect and uphold.

---

[2] Some of the letters contain grammatical and typographical errors.  Undersigned did not correct the errors in the quoted passages in order to preserve the genuineness of the thoughts and emotions expressed.

3

### A. Background

Mr. Szafranski was born in 1978 and grew up in a religious Jewish household in the suburbs of New York, the eldest of three children to Jacob and Annette Szafranski. He attended Yeshiva University in New York, graduating in 2000 and eventually moving to Miami. He has been married to Elana since 1999 and they have three children.

### B. Mr. Szafranski's Childhood as a Role Model to his Family and Friends

Both his immediate and extended family are a tight knit group and Mr. Szafranski was always looked up to as a role model for his younger siblings and cousins. As his younger sister Elana Lesser writes,

> For as long as I can remember, I admired my brother as a role model due to his constant and unwavering devotion to family, friends and the community. He always displays interest in my endeavors and puts the needs of others before his own.

(Letter from Elana Lesser). His father Jacob Szafranski describes "Mikey" as

> … a perfect child, and as he was growing up, he was bright, talented and every parents wished to have such a child. Even as he got older, in high school & college, he never got into trouble.

(Letter from Jacob Szafranski).

### C. Community Leadership and Dedication to His Synagogue and Others

A common theme emerges from the letters, which is that Mr. Szafranski believed it was his responsibility to assist with religious services for those who were too infirm to attend synagogue, and he regularly fulfilled that responsibility.

> Early on, Michael performed many acts of kindness. He would travel to conduct religious services for the infirm, sick and elderly when they would be homebound or hospitalized. He helped organize the religious services in his school and would volunteer for various projects.

4

(Letter from Ida Fenster). Indeed, many of Mr. Szafranski's support letters attest to how involved he is in his local synagogue and how important it is to him to give back the community.

> Michael has always been a giving person… [A]s a member of his congregation in Miami, he has been the only one to read from the Torah each and every Sabbath and holidays for the benefit of the entire congregation. This takes an enormous amount of his time and effort each week and he did this, gratis of course, with no expectation of any money or thank you.

(Letter from Phillip Fenster).

> Several years ago, when he and Elana traveled to New York on the holiday of Purim to celebrate his cousin's bar mitzvah, he delayed his attendance at the bar mitzvah party so that he could read the Purim story to Elana's elderly grandparents, who had not been able to attend services at synagogue.

(Letter from Allison Miller).

Mr. Szafranski's supporters have written about how open and inviting he is towards new members of his synagogue. For many years, Mr. Szafranski was the "Gabbai" at the Young Israel synagogue, which means that he had the responsibility of, among other things, organizing the daily prayer services and reading from the Torah when necessary. He would do this twice a day without pay for years. This was a meaningful role for him, which gave him great pride and personal satisfaction. In 2014, when he realized that his imminent indictment would bring additional public shame to him, he voluntarily resigned from the position as Gabbai. Yet, he made it a point to ease the transition for others.

5

> His warm and friendly demeanor made me feel very welcome in the synagogue… He always found the time help me learn the very complex rules and responsibilities of Gabbai and when after thirteen years of service as Gabbai Mr. Szfranski decided to step down, thanks to his guidance and tutelage I was able to assume the responsibilities of Lead Gabbai… he has been an integral part of the synagogue and one of a select few individuals who went out of their way to make visitors feel welcome.

(Letter from Jeffrey Mandel).

Additionally, various individuals openly expressed Mr. Szafranski's willingness to take precious time away from his family during Jewish holidays to visit the elderly.

> [E]very year during the holiday of Purim, Jews go to the synagogue to hear the story of Esther read from a special scroll, and people who are sick or unable to leave the house don't have a chance to fulfill commandment. Michael, who is one of the few in our community who is able to read from the scroll, has taken it upon himself to visit hospitals in private homes of people who are unable to get to the synagogue in order to read it to them so they can also participate in this very positive commandment. Every year, Michael sacrifice his time with his own family in order to help others perform this commandment.

(Letter from Daniel Sragowicz)

> Even though the holiday [of Purim] emphasizes taking time out to spend with family, before coming home, Michael would go to chant the Megillah again in the homes of elderly people who could not physically get to the synagogue.

(Letter from Rona L. Sturm)

**D. Michael's Active Involvement With his Wife and Children**

Mr. Szafranski recognizes that virtually every defendant facing sentencing has a personal story, a family that loves him/her and, quite often, children who will be affected by the defendant's incarceration. Mr. Szafranski also recognizes that he should have taken these matters into consideration back in 2009.

6

Yet, we note his devotion to his family to show the Court that, in the past six years, after the period in which he succumbed to the temptation of easy money, he simply returned to his roots, fully investing himself in his children's lives and attempting to make ends meet in a new business. What emerges from the letters is a common theme of the active role he plays as a husband and father to his wife and three children.

> For as long as I have known him he has devoted his life to two things, his synagogue, and his family.

(Letter from Rabbi Moshe Gruenstein).

> Michael is such a vital and major part of each and every one of his 3 children's lives. I am personally exhausted seeing him constantly running around to school functions, daily activities and almost every possible free moment with his children…. His children and wife need him as father and husband of their everyday life and are the ones who would be most effected in your decision.

(Letter from Steven Goldstein).

> He is very active in the school they attend. He is proactive in their educational and moral development. He and his two oldest children look forward to the weekly Father Child learning programs…. He is always there for them… I watch with pride when [names redacted] run to him and just want to be near him.

(Letter from Jacob Szafranski).

> He is a rock and a role model. He gushed with pride at his two older children's near perfect report cards last June, telling everyone how proud he was of their accomplishments.

(Letter from Allison Miller).

> [H]e was a very good father. He would do homework with his children, took his son to ballgames on Sunday, put his wife on a pedestal & was a very good husband

(Letter from Ida Fenster)

7

> Michael's absence will place a heavy toll on [name redacted]. The two girls, [names redacted] will suffer. [Name redacted] looks to her father as role model. Breaking the news to her was devastating. [Name redacted], who is only five, really is too young to understand what is going on. However she will see the changes when her father does not return home. Michael's absence will also place an enormous burden on my daughter Elana. My daughter will have to be both mother and father to the children in Michael's absence.

(Letter from Ira Sturm).

We realize that it is a father's responsibility to care for his children. However, in determining the need for punishment and deterrence six years after Mr. Szafranski's misconduct, and the likelihood of recidivism, the Court should consider that Mr. Szafranski has returned to the essence of who he is: a family man simply seeking to provide for a better life for his family and children.

At the end of 2016, Mr. Szafranski's son will begin the intensive learning required to read from the Torah for his Bar-Mitzvah, the right of passage when a Jewish boy matures into a man. Mr. Szafranski's great hope is that he can participate in guiding his son throughout the process.

### III. THE COURT MAY VARY DOWNWARD

This Court's authority to vary downward from the guideline range to a "reasonable" sentence that the Court determines is "sufficient but not greater than necessary" is well-established. A recitation of the case law is not necessary.

## IV. REQUEST FOR REASONABLE SENTENCE

> Imposing a sentence on a fellow human being is a formidable responsibility. It requires a court to consider, with great care and sensitivity, a large complex of facts and factors. **The notion that this complicated analysis, and moral responsibility, can be reduced to the mechanical adding-up of a small set of numbers artificially assigned to a few arbitrarily-selected variables wars with common sense.** Whereas apples and oranges may have but a few salient qualities, human beings in their interactions with society are too complicated to be treated like commodities, and the attempt to do so can only lead to bizarre results.

*United States v. Gupta*, 904 F. Supp. 2d 349, 350 (S.D.N.Y. 2012) *aff'd*, 747 F.3d 111 (2d Cir. 2014) (emphasis added). Mr. Szafranski understands that he has been convicted of a serious offense. He has put himself at the mercy of this Honorable Court to determine his punishment. However, a lengthy prison sentence is unnecessary to deter Mr. Szafranski from future criminal conduct. The shock and further shame of *any* sentence of incarceration will send the appropriate message. But that sentence need not be as long as 30 months to serve the purposes of §3553(a).

As described above, Mr. Szafranski has already suffered significant punishment. He has lost his leadership position in the synagogue, endured the embarrassment of facing fellow worshippers, felt the shame of explaining his conduct to his older children, lost all financial security, and given up his chosen career path.

> [Michael] terminated a successful investment advisory practice that he built from scratch over nearly a decade and now must pursue other career paths. He suffered irreparable damage to his reputation and lost the trust and respect of many professional and personal acquaintances. He forfeited nearly all of his accumulated possessions and downsized his lifestyle significantly.

(Letter from Elana Lesser)

Moreover, his future business ventures will be infinitely more challenging with potential business partners' and clients' knowledge of the conviction.[3] Therefore, deterrence would be satisfied by a brief but just and reasonable sentence. *See United States v. Adelson*, 441 F. Supp. 2d 506, 514 (S.D.N.Y. 2006) ("there is a considerable evidence that even relatively short sentences can have a strong deterrent effect on prospective 'white collar' offenders").

Mr. Szafranski has been living with the fear of this day for six years. He will forever be tarred by his association with Scott Rothstein, making him toxic in the business community. He has brought immense shame and financial distress on himself and his family and will forever carry the albatross of being a convicted felon. As Rabbi Arye Citron writes:

> Over the past few years, I have seen Michael strike a very humble tone. He has become more soft-spoken and his interaction with people. He seems more thoughtful and humble. I believe that he is taking a turn for the better and that he regrets the unfortunate behavior that got him in trouble with the law. He seems truly remorseful of his actions. I'm quite sure that he'll never go down that path again.

(Letter from Rabbi Arye Citron).

## V. **CONCLUSION**

For the foregoing reasons, Mr. Szafranski respectfully requests that this Honorable Court impose a sentence that is sufficient but not greater than necessary to achieve the goals of sentencing. We request that the Court vary downward from the 30-37 month

---

[3] In that regard, Aamco has already sent notice to Mr. Szafranski's that it intends to terminate the franchise agreement for his remaining franchise. See PSI, at ¶68. Thus, once Mr. Szafranski emerges from incarceration, he will likely have to start from scratch again in his late 30s with a felony conviction on his record.

guideline range to a sentence that the Court believes is fair in view of the circumstances set forth above.

Respectfully submitted,

/s/Scott A. Srebnick, Esq.
SCOTT A. SREBNICK, ESQ.
Fla. Bar No. 872910
scott@srebnicklaw.com
DARYL A. GREENBERG, ESQ.
Fla. Bar No. 90904
daryl@srebnicklaw.com
SCOTT A. SREBNICK, P.A.
201 South Biscayne Boulevard, Suite 1380
Miami, Florida 33131
Tele: (305) 285-9019
*Attorneys for Michael Szafranski*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 20, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s Scott A. Srebnick, Esq.
Scott A. Srebnick, Esq.
